IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LAWRENCE BRUNSON | : | CIVIL ACTION |
| | : | NO. 08-2827 |
| v. | : | |
| | : | |
| JAMES B. PEAKE | : | |
| | : | |
| O'NEILL, J. | : | AUGUST 24, 2011 |

<u>MEMORANDUM</u>

Plaintiff Lawrence Brunson, a former employee of the Veterans Affairs Hospital in Philadelphia, claims in this lawsuit that he suffered discrimination because of his race and disability. Defendant James B. Peake, the Secretary of the United States Department of Veterans Affairs, presently moves for summary judgment. For the reasons discussed below, I will deny defendant's motion.

BACKGROUND

In 1999, plaintiff was hired by the United States Department of Veterans Affairs as a food service worker at the VA Medical Center in Philadelphia. <u>See</u> Pl.'s Dep. 7:18 - 8:10 (Mar. 11, 2009) (Def.'s Ex. A). His paygrade was WG-1. <u>Id.</u> at 8:12-14. His duties included preparing for meals, delivering food to patients and cleaning up after meals. <u>Id.</u> at 8:21 - 9:9. His responsibilities required him to stand and walk for extended periods of time. <u>Id.</u> at 39:4-10. He also had to lift heavy objects and push food carts that were between four and five feet tall, <u>id.</u> at 10:8-12, and weighed between forty-five and fifty pounds when fully loaded. <u>Id.</u> at 10:20.

In 2004, plaintiff was promoted to the WG-2 paygrade. <u>Id.</u> at 40:8-10. Although his salary was increased, plaintiff's responsibilities remained the same. <u>Id.</u> at 41:11-19. From 2004 until plaintiff's separation from the VA in 2008 plaintiff's immediate supervisor was Barry

Allen, an African American male.  Id. at 54:12-21.

On August 8, 2005, plaintiff suffered a debilitating injury.  Id. at 57:4-7.  As he was attempting to push a loaded food cart off the elevator the elevator door struck him repeatedly in the back.  Id. at 57:10-19.  Although the elevator malfunction caused him immediate pain, plaintiff finished distributing meals to the patients before reporting his injury to Shari Aughtry, chief of plaintiff's department.  Id. at 63:8-22.  Aughtry ordered plaintiff to visit the employee clinic which was located in the building in which plaintiff was working when he was injured.  Id. at 76:10-14.  Clinic personnel examined plaintiff, gave him ibuprofen and suggested that he consult with his primary care physician.  Id. at 77:18-78:14.

When plaintiff returned to his workspace, he informed Aughtry that he was unable to work because of his back pain.  Id. at 79:20-22.  Aughtry nevertheless ordered him to go back to work.  Id. at 79:13-16.  Plaintiff dutifully returned to the "pot room" and began scrubbing pots.  Id. at 81:22-24.  The process of cleaning pots required plaintiff to bend over and exert substantial downward force.  Id. at 81:24-82:4.  After cleaning three pots, he was in so much pain that he complained to Allen.  Id. at 82:5-9.  Allen told him to go to the employee conference room and sit for awhile.  Id. at 82:6-9.  He remained there until approximately 5:00 P.M. when he was allowed to go home.  Id. at 82:11-15.

Two days after the accident, August 10, 2005, plaintiff visited his primary care physician, Laura Martin, and underwent an x-ray.  Id. at 82:17-21.  Martin prescribed medication to control plaintiff's pain and suggested that he consult with a pain specialist.  Id. at 87:1-3.  Later that week he underwent an MRI.  Id. at 88:1-11.  The tests revealed that he had a herniated disk in his back and had suffered a "very bad sprain."  Id. at 88:13-24.  After the source of plaintiff's pain

had been identified, plaintiff visited a pain specialist who administered an epidural.  Id. at 90:7-9.

The epidural did not alleviate plaintiff's pain; he did not visit the pain specialist again.  Id. at

90:18-22.

     Plaintiff was unable to return to work for several months after the accident.  Id. at 98:12-

16.  He asserts that during that time period he could neither sit nor stand for more than fifteen

minutes at a time.  Id. at 100:14-15.  He also experienced difficulty bending over, squatting,

kneeling and lifting objects heavier than one pound.  Id. at 103:6-104:6.  He required assistance

with daily activities such as bathing, id. at 106:12-19, and he could no longer partake in activities

that he enjoyed such as housework, swimming, playing basketball with his son, painting and

cooking.  Id. at 105:6-106:23.

     On April 26, 2006, plaintiff's physician Dr. David Nicklin indicated in a "work restriction

evaluation" form produced by the United States Department of Labor that plaintiff was capable

of sitting for eight hours per day, walking for two hours per day and standing for two hours per

day.  Id. at 139:2-24, citing Def.'s Ex. E.  Nicklin also indicated that plaintiff could attempt to

work eight hours per day.  Id. at 142:7-9.  On the other hand, Nicklin indicated that Brunson

could not lift, bend, squat, kneel, climb, reach above his shoulder, push or pull.  Def.'s Ex. E.

Plaintiff partially disagreed with Nicklin's assessment, asserting that he could neither sit nor

stand for longer than ten minutes at a time and was unable to work eight hours per day.  Pl.'s

Dep. at 140:14-18, 141:16-17, 142:10-19 (Mar. 11, 2009) (Def.'s Ex. A).

     Plaintiff returned to work on June 2, 2006.  See Dept. of Vet. Affairs, Final Agency

Decision (Aug. 28, 2007) (Pl.'s Ex. 7).  His injury had rendered him unable to accomplish many

of the tasks for which he had previously been responsible.  Pl.'s Dep. at 151:3-6 (Mar. 11, 2009)

3

(Pl.'s Ex. A).  He was unable to wash dishes, id. at 152:12-16, scrub pots, id. at 152:17-19,

deliver food, id. at 152:20-24, push food trucks, id. at 153:18-19, unload food trucks, id. at

153:20-23, or serve vegetables, id. at 155:1-4.  Accordingly, on June 5, 2006, plaintiff visited a

V.A. employee physician who recommended that plaintiff be assigned to light duty work.

See Dept. of Vet. Affairs, Final Agency Decision at 2.  Aughtry rejected that recommendation

because, according to her, plaintiff's department did not have any light duty assignments.  Id.

Aughtry then placed plaintiff on leave without pay status indefinitely.  Id.

On June 12, 2006, plaintiff contacted an EEO counselor.  Dept. of Vet. Affairs, Notice of

Acceptance of Pl.'s EEO Complaint at 1 (Nov. 13, 2006) (Pl.'s Ex. 6).  He received several

months of counseling.  When his counseling concluded on August 31, 2006, he was entitled to

file a discrimination complaint, which he did on September 6, 2006.  Id.  The formal

discrimination complaint alleged that plaintiff had suffered discrimination on the basis of his sex,

race, age and disability.  Id.  His complaint identified two instances of discrimination: (1) on June

5, 2006, his supervisor "refused to honor his physician's return to work with limited duty notice;"

and (2) on June 5, 2006, he was informed that his department "had no light duties for him to

perform and he was sent home without pay."  Id.

In the meantime, on August 21, 2006, plaintiff filed a formal request for reasonable

accommodations.  Pl.'s Dep. at 173:12-18 (Mar. 11, 2009) (Def.'s Ex. A); Pl.'s Ex. 4 at 2.

Plaintiff met with Sarita Kimble to discuss his request for a reasonable accommodations.  Id. at

177:6-12.  He requested that he be permitted to make sandwiches, cut pies, distribute meal tickets

or answer phones.  Id. at 151:1-6, 173:23-174:5.  In order to complete those tasks, however,

plaintiff would have needed an appropriate chair.  Id. at 174:17-24.  On August 23, 2006 and

again on September 5, 2006, the Reasonable Accommodations Committee of the Veterans Administration requested that plaintiff provide detailed and current medical records in support of his request.  See Dept. of Vet. Affairs, Final Agency Decision at 3.

On October 5, 2006, the Reasonable Accommodations Committee authorized plaintiff to return to work in a temporary light duty position.  Id.  On October 10, 2006, a body mechanics specialist instructed plaintiff on how to accomplish tasks such as bending and lifting without aggravating his back.  Id. at 170:12-171:19.  He was initially assigned the task of distributing meal tickets which required him to stand for forty-five minutes to one hour at a time.  Id. at 146:8-17.  Plaintiff asserts that VA officials had promised to provide him with a chair that would allow him to sit for long enough to finish the task but that he never received such a chair.  Id. at 146:13-15.  Instead, they provided a chair from storage that plaintiff described as "a disgusting chair that they had cleaned themselves."  Id. at 164:23-1.  Plaintiff was also occasionally assigned to serve vegetables and scrub pots.  Id. at 149:22-150:1; 150:18-21.  He asserts that his supervisors knew he was unable to accomplish this physically demanding task but asked him to do it anyway because "[t]hey were just being nasty."  Id.

On October 19, 2006, plaintiff met with representatives of the Reasonable Accommodations Committee in a mediation session.  See Dept. of Vet. Affairs, Final Agency Decision at 3.  The Committee again requested that plaintiff provide updated medical documentation.  Id.  On October 30, 2006, plaintiff asked for additional time in which to provide the medical documentation necessary to support his request for reasonable accommodations.  Id. at 180:5-14.  The Reasonable Accommodations Committee received additional medical documentation on November 14, 2006.  See Dept. of Vet. Affairs, Reasonable Accommodation

5

Determination (Nov. 24, 2006) (Pl.'s Ex. 4).  However, it labeled the additional documentation "inconclusive."  Id.  On November 20, 2006, the Committee received a letter from one of plaintiff's supervisors indicating that "indefinite continuation of light duty restrictions [would present] hardship to the service."  Id.  On November 24, 2006, plaintiff was notified that his request for reasonable accommodations had been denied.  Id. at 181:9-13.  The memorandum explaining the decision indicated that plaintiff's medical restrictions prevented him from "performing the assignments of tray loader, patient tray delivery, tray pick up, dish washing, pot and pan washing and general sanitation."  Id. at 182:2-7.  Plaintiff agreed that he was unable to perform the tasks listed in the memorandum.  Id. at 182:15-17.

Plaintiff worked intermittently for the remainder of 2006 and 2007.  Pl.'s Dep.at 10:13-11:9 (Oct. 21, 2009) (Def.'s Ex. A).[1]  On August 28, 2007, he received a partially favorable decision on his EEO complaint.  The Office of Complaint Adjudication found that VA officials had violated the Rehabilitation Act by failing to engage plaintiff in an appropriate interactive process regarding his disability.[2]  See Dept. of Vet. Affairs, Reasonable Accommodation Determination at 17-18.  The Office held:

> Agency officials violated the Rehabilitation Act of 1973 when they:
> 1. Sent [plaintiff] home after [plaintiff] requested an accommodation for his disability; 2. Insisted repeatedly that [plaintiff] must submit up-dated medical documentation before they made a reasonable accommodation determination; 3. Denied [plaintiff's] request for accommodation.

---

[1]       Plaintiff's deposition took place over the course of two days–March 11, 2009 and October 21, 2009.

[2]       The Office held that plaintiff's claims of race, age and gender discrimination could not support his failure to accommodate claim.  See Dept. of Vet. Affairs, Reasonable Accommodation Determination at 1 n.1.

6

Id.

On September 3, 2008, in response to the Office's decision, plaintiff filed another request for reasonable accommodations.  See Memorandum from plaintiff to Sherri Aughtry (Sep. 3, 2008) (Pl.'s Ex. 13).  Plaintiff noted therein that he was "still standing for [] long periods of time" and that he had not been given the opportunity "to discuss the reasonable accommodations that [he] need[ed]."  Id.  On September 9, 2008, VA officials held a meeting with plaintiff to discuss his request for accommodations.  Memorandum from Steven P. Gallerizzo to plaintiff at 1 (Jan. 9, 2009) (Pl.'s Ex. 11).  At that meeting, VA officials discussed with plaintiff their concern that his workplace performance had become "increasingly limited" by his medical condition.  Id.  In total, according to Gallerizzo, plaintiff had been working for three hours per day and taking "long rest breaks" for the remaining five hours.  Id.

Officials and plaintiff agreed upon the essential functions of plaintiff's position.  Id. at 2.  Such essential functions included: (1) using a dishwashing machine to wash dishes; (2) using a pot washing machine to wash pots and then putting the clean pots away; (3) tray line positions; (4) tray delivery and pick-up; and (4) general sanitation.  Id. at 2-3.  Plaintiff was informed that in order to remain employed he must be capable of performing the essential functions of his position either with or without reasonable accommodations.  Id. at 2.  He was also informed that if he desired reasonable accommodations to assist him in performing the essential functions, he would have to "present medical documentation or other specifics which would help the agency understand exactly how [it] could help [plaintiff]."  Id. at 3.

At the conclusion of the meeting, plaintiff requested and received a "high chair with back support."  Id.  He was also placed on light duty for forty-five days.  Id.  VA officials made it

clear that the assignment was temporary and would not be extended.  Id.  Plaintiff did not at any time following the meeting request any additional accommodations.  Id.

Plaintiff was formally terminated from his position on January 16, 2009.  Id.  VA officials based their decision to terminate plaintiff on their conclusion that he was medically unable to perform the essential functions of his position.  Id.  They noted that the high-backed chair that he had been given had not affected the total amount of time that he had been able to work during the day.  Id.

STANDARD OF REVIEW

Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. A fact is "material" if it might affect the outcome of the case under governing law.  Id.

To establish "that a fact cannot be or is genuinely disputed," a party must:

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

8

> (B) show[ ] that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot produce
> admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## ANALYSIS

Defendant argues that he is entitled to summary judgment because plaintiff has not produced sufficient evidence to support either of his discrimination claims.  Plaintiff argues in response that his disability discrimination claim must be submitted to a jury because there is evidence that defendant did not provide reasonable accommodations to plaintiff and that defendant did not engage plaintiff in an appropriate interactive process.  Plaintiff does not, however, respond directly to defendant's argument that defendant is entitled to judgment on the race discrimination claim.  I will discuss each argument in turn.

I.    The Record Contains Genuine Issues of Material Fact with Respect to Plaintiff's Failure
      to Accommodate Claim

The Rehabilitation Act, 29 U.S.C. § 701 et seq., "forbids employers from discriminating against persons with disabilities in matters of hiring, placement, or advancement."  Shiring v. Runyon, 90 F.3d 827, 830-31 (3d Cir. 1996).  The Act requires employers "to mak[e] reasonable

accommodations to the known physical or mental limitations of the individual unless the
[employer] can demonstrate that the accommodation would impose an undue hardship on the
operation of the business of the [employer].'" <u>Williams v. Phila. Hous. Auth. Police Dept.</u>, 380
F.3d 751, 761 (3d Cir. 2004), <u>quoting</u> <u>Taylor v. Phoenixville Sch. Dist.</u>, 184 F.3d 296, 306 (3d
Cir. 1999).  "Reasonable accommodations are '[m]odifications or adjustments to the work
environment, or to the manner or circumstances under which the position held or desired is
customarily performed, that enable a qualified individual with a disability to perform the
essential functions of that position.'" <u>Walton v. Mental Health Ass'n of Se. Pa.</u>, 168 F.3d 661,
671 (3d Cir. 1999), <u>quoting</u> 29 C.F.R. § 1630.2(o)(1)(ii).  Plaintiff claims that defendant
breached his duty to provide plaintiff with reasonable accommodations.

        "In order to survive summary judgment on a failure to accommodate claim under the . . .
[Rehabilitation Act], a plaintiff must point to evidence in the record sufficient to establish that:
'(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance;
(3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably
accommodated.'" <u>Stadtmiller v. UPMC Health Plan, Inc.</u>, — F. Supp. 2d —, No. 09-884, 2011
WL 2600666, at *11 (E.D. Pa. June 29, 2011), <u>quoting</u> <u>Armstrong v. Burdette Tomlin Mem.</u>
<u>Hosp.</u>, 428 F.3d 240, 246 (3d Cir. 2006).  "On the issue of reasonable accommodation, the
plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do
not clearly exceed its benefits.  These two requirements placed on the plaintiff will permit district
courts to grant summary judgments for defendants in cases in which the plaintiff's proposal is
either clearly ineffective or outlandishly costly." <u>Walton</u>, 168 F.3d at 670.

        A.    Interactive Process

Defendant asserts first that he adequately engaged with plaintiff in an interactive process designed to identify reasonable accommodations.  He argues accordingly that plaintiff has not presented evidence to establish the third element of a failure to accommodate claim–that defendant did not make a good faith effort to assist him.  Plaintiff disagrees, arguing that "[d]efendant has no evidence to demonstrate that it engaged in the interactive process before deciding to terminate plaintiff."[3]  Pl.'s Br. at 10 (Doc. No. 29-1).[4]

"The ADA's regulations state that: '[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process

---

[3]     Plaintiff appears to argue that he is entitled to recover under the Rehabilitation Act simply because defendant allegedly did not engage plaintiff in an appropriate interactive process.  See Pl.'s Br. at 3 (Doc. No. 31) ("This is especially so since, in this case, Plaintiff's claim of disability discrimination is based on Defendant's failure to engage in the interactive process of seeking accommodations for the position held or other possible positions within or below Plaintiff's job grade.").  Failure to engage in an interactive process does not, however, by itself give rise to an independent claim under Title VII.  A plaintiff must prove that the defendant's failure to engage in the interactive process led to a failure to provide reasonable accommodations.  See Taylor, 184 F.3d at 318; Rehling v. City of Chi., 207 F.3d 1009, 1015-16 (7th Cir. 2000) ("Because the interactive process is not an end in itself, it is not sufficient for Rehling to show that the City failed to engage in an interactive process or that it caused the interactive process to break down.  Rather, Rehling must show that the result of the inadequate interactive process was the failure of the City to fulfill its role in 'determining what specific actions must be taken by an employer' in order to provide the qualified individual a reasonable accommodation.").  Nevertheless, I must consider whether defendant adequately engaged in the interactive process because the Court of Appeals has indicated that "where there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded."  Taylor, 184 F.3d at 318.

[4]     Plaintiff goes further in his statement of undisputed facts: "The [d]efendant, at no time from August, 2005 until the date of termination on January 9, 2009, engaged in an interactive process directly with Plaintiff to determine any possible responsible [sic] accommodation for continued employment."  Pl.'s Statement of Undisputed Facts ¶ 5.  It is difficult to imagine a more thoroughly disputed "fact."  See also id. ¶ 37 ("Defendant, acting in bad faith, failed to engage in an interactive process with plaintiff to identify a vacant, funded position to meet plaintiff's needs at any time and especially after being ordered to do so in the OEDCA ruling.").

with the [employee] in need of accommodation.'"[5]  Taylor, 184 F.3d at 311, citing 29 C.F.R. §
1630.2(o)(3).  The purpose of the interactive process is to "identify the precise limitations
resulting from the disability and the potential reasonable accommodations that could overcome
those limitations."  Id. at 316, citing 29 C.F.R. § 1630.2 (o)(3).  The Court of Appeals has
cautioned, however, that "[t]he interactive process does not dictate that any particular concession
must be made by the employer; nor does the process remove the employee's burden of showing
that a particular accommodation rejected by the employer would have made the employee
qualified to perform the job's essential functions."  Id. at 317.  Instead, "[a]ll the interactive
process requires is that employers make a good-faith effort to seek accommodations."  Id.

     I must therefore decide whether there is a genuine issue of material fact that defendant
acted in bad faith.  I am guided in this decision by the Taylor Court's discussion:

> Employers can show their good faith in a number of ways, such as
> taking steps like the following: meet with the employee who requests
> an accommodation, request information about the condition and what
> limitations the employee has, ask the employee what he or she
> specifically wants, show some sign of having considered employee's
> request, and offer and discuss available alternatives when the request
> is too burdensome.  These steps are consistent with the
> recommendations in the EEOC's interpretive guideline.

Id. at 317, citing 29 C.F.R. pt. 1630, App. § 1630.9 at 359-61.

     The record reveals that defendant took most, if not all, of the steps that the Taylor Court
found indicative of good faith.  Aughtry's undisputed testimony establishes that in June

---

    [5]     The Rehabilitation Act, which "prohibits disability discrimination by government
agencies and other recipients of federal funds[,]" Stadtmiller, — F. Supp. 2d —, No. 09-884,
2011 WL 2600666, at *11 n.12, quoting Kralik v. Durbin, 130 F.3d 76, 78 n.2 (3d Cir. 1997), is
interpreted consistently with the Americans with Disabilities Act.  See Emerson v. Thiel Coll.,
296 F.3d 184, 189 (3d Cir. 2002).

2006–immediately after plaintiff first requested reasonable accommodations–she assisted

plaintiff in preparing his request for reasonable accommodations.  Aughtry Aff. 15:15-16:8 (Apr.

26, 2007) (Def.'s Ex. G).  She met with plaintiff, provided him with the request form,

encouraged him to fill it out and faxed the necessary paperwork to his physician.  Id.

      Plaintiff first submitted a written request for reasonable accommodations on August 21,

2006.  See Reasonable Accommodation Determination at 1 (Nov. 24, 2006) (Def.'s Ex. H).  The

request form contained outdated medical information.  Id.  A member of the VA's human

resources department telephoned plaintiff two days after he submitted the deficient request to

attempt to obtain current medical documents.  Id.  Having not received updated medical

documentation, the human resources department contacted plaintiff again on September 5, 2006

to request the necessary information.  Id.  Plaintiff finally submitted some of the requested

materials on September 27, 2006 and VA officials were able to schedule plaintiff's request for

review by the reasonable accommodations committee.  Id.

      During the time period between plaintiff's request and the committee's review, VA

officials attempted to accommodate plaintiff informally.  Plaintiff was placed on temporary light

duty to ensure that he could continue to perform his essential job functions.  Aughtry Aff. 27:18-

28:9.  For example, plaintiff was unable to push a food truck to the nursing home ward so VA

officials ordered one of plaintiff's co-workers to push the truck to the ward where plaintiff would

then deliver the trays to the patients.  Id. at 26:20-27:1; Pl.'s Dep. 152:22-153:4 (Mar. 11, 2009)

(Def.'s Ex. A).  Plaintiff testified, however, that even with this accommodation he was unable to

complete the task without enduring pain.  Pl.'s Dep. at 152:22-153:10 (Mar. 11, 2009) (Def.'s

Ex. A).  Plaintiff was also informed that if he needed to lift an object that was too heavy for him

he could ask for assistance.  Aughtry Aff. at 27:6-10.  Additionally, on October 10, 2006,

plaintiff received body mechanics training on how to perform his tasks without aggravating his

injury.  Pl.'s Dep. 170:12-171:14 (Mar. 11, 2009) (Def.'s Ex. A); Memorandum signed by

plaintiff (Def.'s Ex. I).  Each of these temporary accommodations indicates that plaintiff was

acting in good faith to find a way in which to allow plaintiff to perform the essential functions of

his position.

  During October 2006, plaintiff and VA officials engaged in mediation.  <u>See</u> Aughtry Aff.

25:8-11; Reasonable Accommodation Determination at 1.  The mediator concluded that plaintiff

still had not submitted all of the medical records necessary to determine whether he could be

accommodated and requested for a third time that plaintiff submit the necessary materials.

Aughtry Aff. 25:11-13; Reasonable Accommodation Determination at 1.  On October 30, 2010,

plaintiff sought an extension of time within which to provide the medical documentation.

Memorandum from plaintiff to employee relations specialist (Oct. 30, 2006) (Pl.'s Ex. 3).

  Plaintiff submitted a formal written request for reasonable accommodations on November

14, 2006.  Reasonable Accommodation Determination at 1.  In the request form, plaintiff asked

that he be assigned "to perform light duties which would include working on the food tray line . .

. being a starter . . . working [in] the cold food area . . . [and] [t]aking late meal tickets to patients

on the third floor."  Memorandum from plaintiff to employee relations specialist (Oct. 30, 2006)

(Pl.'s Ex. 3).  After reviewing his request, the committee rejected it for two reasons.

Memorandum from Aughtry to plaintiff (Nov. 24, 2006) (Def.'s Ex. J).  First, because plaintiff,

despite several requests from the committee, had not provided "definitive medical documentation

[of] the expected duration of [his] light duty request."[6]  Id.; see also Taylor, 184 F.3d at 317

("Participation [in the interactive process] is the obligation of both parties . . . so an employer

cannot be faulted if after conferring with the employee to find possible accommodations, the

employee then fails to supply information that the employer needs or does not answer the

employer's request for more detailed proposals.").  Second, because plaintiff's medical

restrictions prevented him "from performing the full duties and responsibilities of a WG-2 Food

Service Worker position."  Id.  Aughtry noted that plaintiff's physician had prohibited him from

bending and from lifting more than ten pounds.  Id.  According to Aughtry, those restrictions

prevented plaintiff from performing the essential functions of his position, including: (1) tray

loader; (2) patient tray delivery; (3) tray pick up; (4) dishwashing; (5) pot and pan washing; and

(6) general sanitation.  Id.  At his deposition, plaintiff agreed that he was physically unable to

perform the tasks listed.  Pl.'s Dep. 182:9-17 (Mar. 11, 2009) (Def.'s Ex. A).  The only task

within the WG-2 paygrade that plaintiff was capable of performing was "taking meal tickets," id.

at 151:1-3 ("Q.  Besides the sorting of the tickets, what else could you do?  A.  I could make

sandwiches [which was a WG-3 function] . . . .  Q.  What else?  A.  That's mostly it."), which

took approximately forty-five minutes to one hour per meal or a total of three hours per day.  Id.

at 150:5-10; Poltorak Aff. 21:16-18 (Apr. 27, 2007) (Pl.'s Ex. 20).

      Aughtry asserted that she and the reasonable accommodations committee had considered

whether they could reassign plaintiff to a different position.  Aughtry Aff. 28:17-29:2.  They

---

[6]      At his deposition, plaintiff claimed that with respect to medical documentation he had submitted "anything from [his] doctor."  Pl.'s Dep. at 175:22-23 (Mar. 11, 2009) (Def.'s Ex. A).  When pressed for details on what he had submitted, however, plaintiff could not remember precisely what documents he had provided.  Id. at 176:3-5.

decided, however, that there was no other job that he was qualified to do and therefore that reassignment was impossible.  Id. at 29:1-2.  With respect to plaintiff's request that he be permitted to make sandwiches, cut pies and dip fruit, Aughtry informed him that "working in the cold food area . . . is a WG-3 assignment and therefore not a responsibility I am authorized to permit you to perform."  See Memorandum from Aughtry to Plaintiff (Nov. 24, 2006) (Pl.'s Ex. 4).  The committee determined that the only essential functions that he was capable of performing were starting trays and placing coffee and tea on trays.  Id.  In light of plaintiff's inability to perform the vast majority of the essential functions of his position, Aughtry determined that keeping plaintiff on light duty indefinitely would impose a "significant hardship" on the VA's ability to provide "quality nutritional care."  Id.

On the other hand, there is at least some evidence that defendant did not act entirely in good faith.  Barry Allen, one of plaintiff's direct supervisors, testified that he had been able to accommodate plaintiff for at least part of 2007 and 2008 by allowing him to perform light duty tasks.  Allen Aff. 58:21- 59:3 (Feb. 18, 2010) (Pl.'s Ex. 18).  He therefore suggested to Aughtry several possible accommodations for plaintiff's disability, id. at 45:17-21, including that "plaintiff work somewhere that was not strenuous."  Id. at 45:19-20.  He confirmed that such positions existed at the time plaintiff requested reasonable accommodations.  Id. at 45:22-23.  He also made similar suggestions to Janice Poltorak, another of plaintiff's supervisors, telling her that plaintiff could work in "limited positions on the tray line [while standing for] no longer than 45 minutes."  Id. at 47:19-20.

Allen also created a list of tasks that plaintiff felt comfortable handling.  Id. at 92:4-9.  He claimed that Aughtry approached him after one of the meetings concerning plaintiff's reasonable

16

accommodations request and informed him that "the agency was looking hard at not having a lot of light duty." Id. at 93:11-19.

Review of the evidence reveals that defendant engaged plaintiff in an interactive process. The fact that Allen had been able to accommodate plaintiff and had even created a list of tasks that plaintiff was capable of handling, however, suggests that defendant may not have been interacting in good faith.[7]  A determination of defendant's motive is best left to a jury.

B.     Not Qualified

Defendant also claims that it was impossible to accommodate plaintiff because he was physically unable to perform the essential functions of his position.  In other words, defendant claims that plaintiff was not qualified for the position he held.  An employee is "qualified" for the purposes of the Rehabilitation Act if "with or without reasonable accommodation, [the employee] can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  There is substantial evidence supporting defendant's position including plaintiff's admission that he was incapable of washing dishes, see pl.'s dep. at 152:12-16 (Mar. 11, 2009) (Def.'s Ex. A), scrubbing pots, id. at 152:17-19, delivering food, id. at 152:20-24, pushing food trucks, id. at 153:18-19, unloading food trucks, id. at 153:20-23, or serving vegetables, id. at 155:1-4.

I will deny the motion for summary judgment, however, for two reasons.  First, because

---

[7]     In order to decline to adopt a proposed accommodation–such as, in this case, a request for a light duty assignment–an employer must show that the accommodation would have presented an undue hardship.  See Fleck v. WILMAC Corp., No. 10-05562, 2011 WL 1899198, at *4 (E.D. Pa. May 19, 2011).  Defendant concedes that he did not conduct an undue hardship analysis with respect to plaintiff's request.  Def.'s Resp. to Interrogatories ¶ 4 (June 2, 2009) (Pl.'s Ex. 21).

the Court of Appeals has stated that "where there is a genuine dispute about whether the employer acted in good faith, summary judgment will typically be precluded." Taylor, 184 F.3d at 318. The Taylor Court reasoned that the employer's bad faith may have prevented the employee from identifying an accommodation that would allow him to perform his essential job functions. Id. at 318 ("An employer who acted in bad faith would be in essentially the same, if not better, position than one who participated; that is, both employers would be arguing that the employee failed to find an accommodation making him or her able to perform the essential function of the job. The less the employer participated, the easier this would become, and as a result, the requirement that employers participate in the interactive process would be toothless."). Second, because evidence that Allen had been able to accommodate plaintiff might allow a reasonable jury to conclude that defendant could have provided reasonable accommodations. Defendant will, of course, be permitted to introduce evidence as to why plaintiff's proposed accommodations were not reasonable.

II.    The Record Contains Genuine Issues of Material Fact as to Plaintiff's Race
       Discrimination Claim

       Defendant argues that there is no evidence that he discriminated against plaintiff because of his race. The familiar test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) applies to this case. First, plaintiff bears the burden of proving that: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) the adverse action was under circumstances giving rise to an inference of discrimination." Young v. Sch. Dist. of Phila., 2011 WL 1789916, at *2 (3d Cir. May 11, 2011), citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797-98 (3d Cir. 2003). If

18

plaintiff is able to establish a prima facie case, an inference of discriminatory motive arises and

the burden of production shifts to defendant to put forth a legitimate non-discriminatory reason

for his actions.  See Sarullo, 352 F.3d at 319.  This is a relatively light burden which "can [be]

satisf[ied] . . . 'by introducing evidence which, taken as true, would permit the conclusion that

there was a nondiscriminatory reason for the unfavorable employment decision.'"  See Fuentes v.

Perskie, 32 F.3d 759, 763 (3d Cir. 1994), quoting St. Mary's Honor Ctr. v. Hicks, 508 U.S. 502,

509 (1993).  Finally, if defendant is able to put forth a legitimate non-discriminatory reason for

his actions, plaintiff must demonstrate that the proffered reason is pretextual.  See id.  For

plaintiff to succeed under a pretext theory, he must prove that the impermissible factor was the

determinative factor in the adverse employment action.  See Watson v. Se. Pa. Transp. Auth.,

207 F.3d 207, 215 (3d Cir. 2000).  This standard is referred to in other contexts as "but for

causation."  See LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 n.8 (3d Cir.

2007).

 Defendant argues that plaintiff has not produced evidence that the adverse employment

action he suffered occurred under circumstances giving rise to an inference of discrimination.

Plaintiff has not responded to this argument in his brief.  I have nevertheless reviewed the record

for evidence in support of his race discrimination claim.  See Smith v. Zeeky Corp., No.

09–4253, 2010 WL 1878716, at *5 (E.D. Pa. May 7, 2010) (noting that Local Rule 7.1 requires

that uncontested motions for summary judgment be reviewed under the standard set forth in

Federal Rule of Civil Procedure 56(c)).

 Plaintiff's claim appears to be based primarily on the fact that Daniel McSweeney, a

white employee of defendant who suffered from a back ailment, was permitted to cut pies and

answer phones while plaintiff was denied similar accommodations.  Pl.'s Dep. 50:13-21 (Oct. 21, 2009) (Def.'s Ex. B).  Evidence that an employee in a non-protected class was treated more favorably than an employee in a protected class is relevant only if the two employees were "similarly situated" at the time of the disparate treatment.  In order to have been similarly situated, the two employees must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it."  Anderson v. Haverford College, 868 F. Supp. 741, 745 (E.D. Pa. 1994).  Plaintiff bears the burden of proof on this point.  See Nguyen v. AK Steel Corp., 735 F. Supp. 2d 346, 362 (W.D. Pa. 2010).

McSweeney and plaintiff were both WG-2 employees.  Def.'s Resp. to Interrogatories ¶ 5 (June 2, 2009) (Pl.'s Ex. 19).  McSweeney suffered a back injury and requested an accommodation from the reasonable accommodation committee.  Id.  The committee assigned him tasks ordinarily reserved for WG-3 employees such as cutting pies and answering phones. Id.; Pl.'s Dep. at 50:15-21 (Oct. 21,  2009) (Def.'s Ex. B).  Plaintiff requested similar accommodations after he suffered his back injury.  Id. at 50:17-21.  Aughtry denied his request on the ground that she was not permitted to accommodate him by assigning him tasks above his paygrade.  Def.'s Resp. to Interrogs. ¶ 5.  She claimed that she learned that McSweeney's accommodation was inappropriate after McSweeney retired but before plaintiff requested an accommodation.  Id.  However, plaintiff testified that McSweeney continued to be accommodated in this fashion even during the time period that plaintiff was injured.  Pl.'s Dep. at 51:24-52:1 (Oct. 21,  2009) (Def.'s Ex. B) ("Q.  And how long did he continue doing those jobs?  A.  Since I been [sic] there.  Since I was injured.  I came out.  And I was out, and he was

20

still slicing pies."). If, as plaintiff's testimony indicates, Aughtry refused to provide accommodations to a black employee that she provided to a white employee a reasonable jury could conclude that defendant discriminated against plaintiff on the basis of his race.[8] There is a genuine issue of material fact as to Aughtry's motive in refusing to provide plaintiff with accommodations similar to those she provided to McSweeney. That question must be decided by the jury after trial.[9] See Bartos v. Pa. Dept. of Envtl. Prot., No. 08-0366, 2011 WL 2456613, at *23 (M.D. Pa. May 25, 2011) ("Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor."), citing Mitchell v. Forsyth, 472 U.S. 511, 529 (1985).

CONCLUSION

Plaintiff has produced sufficient evidence to raise genuine issues of material fact with respect to both of his claims. A jury will be empaneled to decide: (1) whether defendant failed to provide plaintiff with reasonable accommodations in violation of the Rehabilitation Act; and (2) whether defendant discriminated against plaintiff on the basis of his race.

An appropriate Order follows.

_____

[8]       A refusal to accommodate an employee is an adverse employment action. See Storey v. Burns Intern. Security Servs., 390 F.3d 760, 764 (3d Cir. 2004) ("We have defined 'an adverse employment action' under Title VII as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"), quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001).

[9]       Defendant also argues that plaintiff did not produce evidence to establish that he was qualified for the job in question. I have already found that there is a genuine issue of material fact as to whether plaintiff was qualified for his position. See supra part I(B).